EASTERN DIST.
May, 1837.

PALFREY
vs.
STINSON ET AL.

</div>

=====

## PALFREY vs. STINSON ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

It is incumbent on a party alleging he was led into error by the false representations of the adverse party, in avoidance of the contract to prove it, and to show the error was produced by the conduct of this party.

Where owners assume to act for themselves as sole proprietors, they cannot afterwards say they were only part owners. Their acts will supercede any proposition which had been before made by their agent; for the agent cannot control the principal.

This is an action by the plaintiff, who is a broker, founded on the following agreement :

" *Memorandum of sale;* Stinson & Campbell to H. W. Palfrey, one hundred and fifty shares of Gas Light Bank Stock, at six dollars and seventy-five cents per share, payable and deliverable as soon as the transfer book is ready. Terms, cash on delivery.

<div align="center">

" STINSON & CAMPBELL,
" H. W. PALFREY.

</div>

"NEW-ORLEANS, 16th June, 1835."

EASTERN DIST.      The plaintiff alleges he demanded a compliance with said
*May*, 1837.    agreement, by delivery of the stock, on the 23d of June,
PALFREY      1835, and that the defendants failed and refused to comply,
*vs.*       whereby he has sustained a loss of one thousand five hun- *
STINSON ET AL.   dred dollars, as he could have made a profit on the stock to
that amount.   He prays judgment for this sum in damages.

The defendants denied the allegations in the petition,
except those specially admitted.   They admit they signed
the agreement, but averred that it was executed in error
through the false and fraudulent pretences of the plaintiff.

Upon these pleadings and issues the parties went to trial.
The cause was submitted to a jury on the testimony intro-
duced by the parties respectively, who returned a verdict for
the plaintiff, in the sum of three hundred dollars.   After an
unsuccessful attempt on the part of the defendants, to obtain
a new trial, judgment was rendered confirming the verdict,
from which they appealed.

*Lockett*, for the plaintiff, contended, that the case depended
entirely on questions and matters of fact, and the jury having
found for the plaintiff, their verdict should not be disturbed.

*Carter*, for the defendants, insisted the verdict was not
sustained by the evidence.

2.  *Carter* (witness) declares he was interested in the
stock, it being partly owned by him and the defendants, of
which fact the plaintiff was fully aware.

3. The witness (Carter) told the plaintiff he would only
sell for cash, when the latter went to defendants, concealing
this knowledge, and procured the agreement sued on.   It
is clear this memorandum was given in error, and obtained
by the deceitful practices of the plaintiff.

4. The verdict is erroneous, even if the jury believed the
defendants were bound by this agreement, for there is no
evidence showing damages to the extent of three hundred
dollars.   The verdict is manifestly erroneous, and should be
set aside, and the case remanded, if the defendants are liable
at all.

*Bullard, J.,* delivered the opinion of the court.

EASTERN DIST.
*May,* 1837.

PALFREY
*vs.*
STINSON ET AL.

The plaintiff alleges in his petition, that the defendants, on the 16th of June, 1835, sold to him one hundred and fifty shares of the stock of the New-Orleans Gas Light and Banking Company, payable on delivery, and to be delivered as soon as the transfer books of the company were ready. He avers his constant readiness to comply with his part of the contract, and that he offered so to do, but that the defendants refused to deliver the stock when demanded, on the 23d, and 29th June following. He sues for damages for the non-performance of the contract.

The defendants admit that they signed the agreement referred to, but they aver that it was given through error, and attained by the false and fraudulent pretences of the plaintiff.

The issue thus made up between the parties was submitted to a jury, who gave a verdict against the defendants for three hundred dollars damages, and they appealed.

It appears that on the day the transfer book was opened, a demand was made of the defendants by a notary public, and on their refusal, a protest was made, which was given in evidence. This is one of the ways in which a debtor may be put *in morâ,* according to article 1905 of the code. According to the protest of the notary, the reason assigned by the defendants for not complying with their contract was, that Mr. Carter, acting for them, had authorized the plaintiff to transfer the stock on the day the memorandum bears date, and that he (Palfrey) had failed to comply with the terms of said authorization, or to effect the transfer in the manner agreed upon between him and Carter, and that the above agreement, which was signed by them without any knowledge of the above agreement, was consequently null.

It is in evidence that the first memorandum alluded to, was given up to the defendants themselves at the time when the contract, now in controversy, was signed by them, and consequently they knew that the sale had not been effected under that agreement, and it was cancelled by them, and they agreed to receive the price of the stock whenever the

EASTERN DIST.
*May*, 1837.

PALFREY
*vs.*
STINSON ET AL.

It is incumbent on a party alleging he was led into error by the false representations of the adverse party, in avoidance of the contract to prove it, and to show the error was produced by the conduct of this party.

Where owners assume to act for themselves as sole proprietors, they cannot afterwards say they were only part owners. Their acts will supercede any proposition which had been before made by their agent; for the agent cannot control the principal.

transfer book should be opened, instead of requiring it at the time of the agreement. It does not appear what representations were made to the defendants by Palfrey, in order to induce them to vary the agreement. In their answers, the defendants aver that they were led into error by the false representations or pretences of the plaintiff. It was certainly incumbent on them to establish this allegation by proof, and it is not enough that they were in error, that error must be shown to have been produced by the conduct of the plaintiff.

The testimony of Mr. Carter throws but little light upon this part of the case, for he was not present when the last agreement was made; according to his statement one of the defendants, *on the morning of the 16th June*, was about authorizing the plaintiff to sell the stock, payable on delivery, when the book should be opened, but the witness objected to it, and required it should be sold for cash; that a transfer was then made in blank by defendants to plaintiff; that Palfrey told witness afterwards, that his friend who proposed to purchase the stock did not like to pay until the transfer book should be opened; witness informed him that he could not sell on those terms, and required Mr. Palfrey to return the memorandum to him, which he promised to do, but witness thinks Palfrey declared at the same time, that he would make Stinson & Campbell transfer one hundred and fifty shares to him; after this conversation, the first memorandum was given up to the defendants by Palfrey, and the one now sued on was substituted in its place. If the deception alleged to have been practiced by plaintiff consists in not informing Stinson & Campbell that Mr. Carter objected to any sale not for cash, it does not appear to us important, inasmuch as they knew at the time, the objection of Mr. Carter. They were informed by him at the broker's office that he insisted on a sale for cash. They had a right to cancel the first agreement. According to their statement, Mr. Carter was acting for them, and as their agent. Having assumed to sell as sole owners of the stock, they cannot now pretend that they were only part owners. If Mr. Carter was their agent, he could not control his principals.

This evidence was submitted to a jury, who by their verdict have negatived the allegation in the answer, and we are not satisfied that it ought to be disturbed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.