# J. Charles Dicken, Garnishee of Henry Dickson, Plff. in Err., v. W. Seward B. Hays.

A bill in equity was filed in August, 1880, by a judgment creditor and purchaser of real estate at sheriff's sale, to declare a conveyance of the real estate (made in July, 1874, prior to the sheriff's sale) fraudulent and void, as against his judgment, and for a conveyance to the complainant, and for other relief. It seemed that the statute of limitations was set up as a defense. The court decreed the conveyance fraudulent and ordered a conveyance to the complainant of such of the real estate as had not been sold to bona fide purchasers for value without notice. An attachment execution was then issued on complainant's judgment, attaching the purchase money of the lots conveyed to the bona fide purchasers. The pleas were former recovery, the statute of limitations, and *nulla bona*. The court directed verdict for plaintiff under the evidence, reserving as questions of law whether the equity proceedings and the statute of limitations were a bar, and subsequently entered judgment for the plaintiff. No exception was taken to the form of reservation of law. Judgment affirmed.

(Decided November 15, 1886.)

Argued October 25, 1886, before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. October Term, 1886, No. 13, W. D. Error to Common Pleas No. 1 of Allegheny County to review a judgment for the plaintiff on points reserved in an attachment *sur* judgment. Affirmed.

The facts appear by the opinion of the court below, by COLLIER, J., on the reserved questions of law.

The court charged the jury as follows:

"This case will turn generally on questions of law, and they are not for you. The view we have of the case for the present is that the plaintiff, under the facts he has given in evidence, is entitled to a verdict for the amount of his claim."

No exception appears to have been taken to the form of the reservation. The record of the equity suit, although offered in evidence, was not printed in plaintiff's paper book.

The following is the opinion of the court on the reserved questions:

"On the trial it was undisputed that Hays, the plaintiff, on

NOTE.—For the effect of fraud on the running of the statute of limitations, see note to Stewart v. McBurney, 1 Sad. Rep. 234.

August 16, 1880, filed a bill in equity against Henry Dickson, the defendant, and J. C. Dicken, the garnishee [to No. 531 September term, 1880], setting forth that in November, 1875, he had obtained a judgment against the defendant, Henry Dickson; that the debt represented by it existed prior to July 1, 1874; that it was unpaid; that he had levied on 16 lots in Mifflin township; that on July 1, 1874, these lots had been fraudulently and collusively conveyed by Dickson to Dicken to delay and defraud Dickson's creditors, of whom Hays was one. About September 14, 1880, Hays amended his bill by joining Joseph Patterson, who had bought 5½ lots of said Dicken, and 2½ lots were held by purchasers not parties to the bill.

"The prayers of the bill were: 1. To adjudge the deed from Dickson to Dicken fraudulent and void as against Hays and his debt and judgment. 2. To enjoin Dicken and Patterson from selling any of the lots. 3. To order and direct Dicken and Patterson to release and convey to the purchasers at the sheriff's sale on the Hays writ. 4. For such other relief as the nature of the case shall require.

"The decree in the equity case, affirmed by the supreme court, was: '1. That the deed of July 1, 1874, from Dickson to Dicken was made and received with the purpose and intent on the part of Dicken and Dickson to hinder, delay, and defraud the creditors of Dickson. 2. That on and prior to July 1, 1874, Dickson was indebted to Hays, and that the indebtedness to Hays remains unpaid, and that the deed was void and fraudulent as to Hays. 3. That before the filing of the bill Dicken had conveyed 8 of the lots to bona fide purchasers for value without notice, and that Joseph Patterson was one of such purchasers. 4. That Hays, by the sheriff's sale, had acquired title to the 8 lots which Dicken had not sold. 5. That Dicken should convey said 8 lots to Hays. 6. That the bill be dismissed as to Joseph Patterson.'

"This decree was fully complied with by Dicken before the trial of this execution attachment. On the trial the entire evidence was the Hays judgment; the execution attachment; the execution of the Hays judgment and sheriff's return; the record in the equity case and Dicken's admission that he had in his hands $3,900 received from the sale of the 8 lots to Patterson and others mentioned in the decree.

"This attachment was issued and served on Dicken, the gar-

nishee, in September, 1880, and the sheriff's sale not paying Hays' judgment in full, he claimed the right to receive balance out of the $3,900 in the hands of Dicken—the proceeds of the 8 lots sold to Patterson and others.

"The defendant presented the following points, *viz.:* '1. That the proceedings and final adjudication at No. 531, September term, 1880, are a bar to any recovery by the plaintiff in this case. 2. That the fraud alleged, upon which this attachment is based, happened more than six years prior to the issuing of this attachment, and the plaintiff has shown nothing that would prevent the bar of the statute; and Dicken having pleaded the statute, the verdict must be for him.'

"These points were refused and reserved.

"The pleas in the case are *nulla bona,* former recovery and the statute of limitations.

"First. Was the decree in equity a bar to this proceeding? The bill clearly shows that its whole object was to declare the conveyance of the 16 lots by deed of July 1, 1874, fraudulent as to creditors, of whom Hays was one, and to order a conveyance of such as were fraudulent to the purchasers at sheriff's sale on the Hays writ. The bill did not ask that the money received by Dicken on the 8 lots sold by him to innocent purchasers for value without notice should be paid to him on his judgment. On the contrary, it expressly charged that the conveyance of the lots sold to Patterson was also fraudulent and void. Nor would the prayer for general relief help the matter, for as to the money Dicken received from innocent purchasers without notice, the plaintiff had an adequate remedy at law by his attachment execution, then in full force.

"I fail to see anything in the record of the equity case that shows Hays sought to have Dicken charged with sufficient of the money he received to pay the balance of his judgment, or that he ought so to have claimed, and there was no judgment of the court on the point. Schriver v. Eckenrode, 87 Pa. 215.

"The decree of the court is in harmony with the bill, and declares the deed for the 16 lots fraudulent and made with intent to cheat and defraud the creditors of Dickson, of whom Hays was one, and decrees that Dicken convey 8 of them to Hays, the purchaser at the sheriff's sale, and that the bill, as to Patterson, who with others holds the other 8, be dismissed because they were purchasers for value without notice. We think the equity proceeding is not a bar to this attachment in execution.

"Second. As to the statute of limitations: The record in the equity case shows that it was claimed that the alleged fraud had come to the knowledge of the plaintiff more than five years before the filing of the bill, and was therefore barred by the statute of April 22, 1856; and that the master found that there was no evidence to show that the plaintiff had any notice of the original fraud prior to the summer of 1876. This, we think, disposes of the plea of the statute of limitations.

"And now, October 21, 1885, judgment is entered for the plaintiff on the reserved questions on payment of the verdict fee."

The defendant excepted to the entry of the above judgment for the plaintiff on the reserved questions, and at his instance, a bill of exceptions was sealed.

The assignments of error specified the action of the court in ordering judgment to be entered in favor of the plaintiff, on the questions of law reserved; in not entering judgment in favor of the garnishee, on the questions of law reserved, *non obstante veredicto;* and in refusing the points of the garnishee.

*A. M. Brown* and *John S. Ferguson,* for plaintiff in error.— Suppose that it had appeared that, notwithstanding the fraudulent character of the conveyance by Dickson to Dicken, none of the lots were available to Hays by reason of all of them having been conveyed by Dicken to bona fide purchasers for value without notice, would not the prayer for general relief have prevented Hays' bill from being dismissed, and would not the court have decreed the payment of the judgment out of the proceeds in Dicken's hands? If so, then before he began this execution attachment he was before a court of competent jurisdiction, capable of affording him full relief.

In a bill for specific performance, the court will retain the suit, although not ordering specific performance, and award to the complainant compensation in damages to prevent a multiplicity of suits. Waterman, Spec. Perf. § 517; Morss v. Elmendorf, 11 Paige, 277; Chartier v. Marshall, 56 N. H. 478; Milkman v. Ordway, 106 Mass. 232.

A court of equity will not entertain a suit to set aside a deed as fraudulent against creditors—there being an adequate remedy at law in proceedings for the distribution of the proceeds

of a sheriff's sale. Girard Nat. Bank v. Maguire, 39 Phila. Leg. Int. 168.

It seems to be well settled that a court of equity having once had jurisdiction in a suit, over the subject-matter of it, will not, except by its permission, allow resort to any other forum in respect of that subject-matter, either when the proceedings are pending in the court or after decree, except in cases where the right to sue arises on instruments executed under the decree. Fry, Spec. Perf. 388.

It is no answer to say that the plaintiff in his equity case did not specially ask for a decree for the payment of the balance of his judgment. If that matter pertained to his cause of action, it is determined by the judgment whether presented by the pleadings or not. Thompson v. Myrick, 24 Minn. 4; Head v. Meloney, 111 Pa. 99, 1 Cent. Rep. 858, 2 Atl. 195.

A plaintiff is not bound to wait until a fraudulent grantee has converted the land into money before he seeks redress; it would be absurd to say that if that conversion did not take place for six, ten, or fifty years after the fraudulent act, the date of the conversion would fix the time from which the statute of limitations would begin to run. Ignorance of the fraud will not excuse the delay.

A general allegation of ignorance at one time and of knowledge at another is of no effect. If the plaintiff made any particular discovery, it should be stated what it was, when it was made, and why it was not made sooner. Fisher v. Boody, 1 Curt. C. C. 220, Fed. Cas. No. 4,814, and Carr v. Hilton, 1 Curt. C. C. 390, Fed. Cas. No. 2,437.

A party seeking to avoid the bar of the statute on account of fraud must aver and show that he used due diligence to detect it; and if he had the means of discovery in his power, he will be held to have known it. Nudd v. Hamblin, 8 Allen, 130.

The allegation that defendant pretended and professed to the world that the transactions were bona fide transactions is too general to amount to anything. Wynne v. Cornelison, 52 Ind. 312.

Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent injury.

There must be reasonable diligence; and the means of knowledge are the same thing, in effect, as knowledge itself.

The circumstances of the discovery must be fully stated and the delay which has occurred must be shown to be consistent with the required diligence. Wood v. Carpenter, 101 U. S. 135, 25 L. ed. 807.

An execution attachment in this state is a proceeding "to levy an execution upon stocks, debts, and deposits of money belonging or due to the defendant." Ordinarily the attaching creditor stands in the shoes of the defendant and can only recover against the garnishee where the defendant could recover against him. Under the facts of this case an execution attachment will not lie. The plaintiff has attached neither stocks, debts, nor deposits of money due by Dicken to Dickson. The land having been converted, its vendor holds without consideration the money of his grantor, of which he is deemed to be a trustee *ex maleficio* for his creditors. Heath v. Page, 63 Pa. 108, 124, 3 Am. Rep. 533.

The attachment, therefore, is sustained solely on equitable grounds, and is in effect a bill in equity.

*H. & G. C. Burgwin,* for defendant in error.—There was no proper reservation of law. The facts should have been found. No exception was taken to the form of reservation. The judgment will therefore be affirmed.

The issues in the equity case and the testimony to support them were entirely different from those here. This would have appeared had they been printed in plaintiff's paper book.

The principle on which this court decided Schriver v. Eckenrode, 87 Pa. 213, covers and determines this case.

Suppose it had been the case that Dicken, the fraudulent holder, had sold all the lots to Patterson for a valuable consideration and without notice, and that our prayer for relief— that Dicken and Patterson be decreed to convey the lots to Hays —had failed simply for that reason, notwithstanding the proof of Dicken's original fraud, would it be contended for a moment that we could not then have attached the proceeds in Dicken's hands, as was done in Heath v. Page, 63 Pa. 108, 124, 3 Am. Rep. 533 ?

An execution attachment is not among the actions enumerated, to which the statute may be pleaded.

Our cause of action, which was the receipt of money which, as against Dickson's creditors, Dicken could not hold, arose only a few months before our suit was brought.

Even if the original fraud on the part of Dicken should be considered the cause of action, it could not affect us till discovered.

PER CURIAM:

The decree on Hays' bill of August 16, 1880, established, beyond controversy, that the conveyance by Dickson to Dicken, of the 16 lots in Mifflin township, was fraudulent and void as to Dickson's creditors, of whom Hays was one. It follows that it was all the same whether Dicken held the lots or the money derived from their sales. In either case, for the purposes of the creditors, either or both were the property of Dickson, and were liable to execution or attachment.

As to the decree, and the statute of limitations, the court well held that the plaintiff was concluded by neither.

Judgment affirmed.