CHARLES H. MEROTTEY

Vs.

No. 7668.

LT ONTARIO HOMESITE CO., LTD.

January 26th, 1920.

CHARLES F. CLAIBORNE, JUDGE.

This is a suit by a vendee to recover from his vendor the purchase price of property paid by him under a contract of sale which he alleges he signed under false representations and through error.

The plaintiff alleges that he signed the following contract:

"The New Orleans Homesite Co., Ltd. herein agrees to sell to Geo. E. Warckley of Bogalusa, La., who also agrees to buy 2 lots, as per location and measurements of plan on the reverse side hereof, and known as lot No.102 on said plan, for the price and sum of $780 payable $50 cash, receipt of which is hereby acknowledged, and balance in monthly payments of $15 bearing 6% interest from date. When one half of the purchase price hereof has been paid, the said Company agrees to transfer this property and purchaser agrees to accept title by act before Felix J.Dreyfous, Notary Public, free from all incumbrances, except the unpaid portion of the purchase price. Purchaser to assume taxes of 1914 and subsequently. Should the purchaser fail to make two consecutive payments before the said one half of the purchase price has been paid, it may be considered as an abandonment of his interest in this contract, and it may become forfeiture, unless the Company makes an extension of time."

"Repurchase Clause. This Company agrees to re-purchase this property when called upon as hereinafter stipulated, at the price herein sold, plus 10% profit, upon written notice to this Company within ninety days prior to the date of maturity of the last note and subject to the agreement then entered into to be binding upon both

parties. Signed in duplicate this 11 day of February, 1914.

 Signed

 New Orleans Homesite Co., Ltd.

 Jno. W. Cavanaugh
 P

Witnesses:
 George B. Werckley "
R. L. Sanford.

 The plaintiff further alleged that the said R.L.Sanford
was the representative and sales-agent of the defendant, the New
Orleans Homesite Co.; that he obtained the signature of the plain-
tiff to the above contract; that both before and at the time of
signing of said contract the said Sanford repeatedly represented
to petitioner that the above contract would and did obligate the
defendant Company to buy the two lots of ground back from petition-
er at a profit of ten per cent on the amount of the purchase price;
that said representations, so made by said Sanford were the sole
inducement to petitioner to sign the contract, and that he would
not have signed it out for said representations; that petitioner
placed his faith in said representations, and believed that they
were embodied in the clause above quoted designated in said con-
tract as the "Repurchase Clause"; that several months after sign-
ing said contract he consulted legal counsel upon the same, and was
advised that the said "Repurchase Clause" contained no obligation
on the part of the defendant Company to repurchase said lots at a
ten per cent profit or otherwise; that this constituted an error
on his part on the principal part of the contract produced by the
representations of defendant's agent and by said "Repurchase Clause";
that said clause was designed to make petitioner believe and he did
believe that it imposed the obligation upon the Company to repur-
chase the lots at a ten per cent profit, and he was induced by said
belief to sign said contract; petitioner alleged that under the
terms of said contract he had paid the defendant Company $245
for which he claims judgment.

 The defendant for answer admitted the contract of sale
above set forth, and that R.L.Sanford was its agent, but denied
all the other allegations in said petition contained.

 This answer is a specific denial even of the allegation
that the plaintiff paid the defendant any part of the purchase
price, and is sworn to by J. W. Cavanah, President of the defendant

 184

Company, although the contract of sale is annexed to the petition and is signed by J.W.Cavanah and contains the specific admission that plaintiff has paid $50 cash "receipt of which is hereby acknowledged". We take this occasion to call the attention of the bar to the fact that such contradictory and careless pleadings, sometimes presented to us, but often not attributable to their clients, are in opposition to the spirit and object of the Practice Acts of 1912 and 1914, and are not calculated to place their clients in a favorable light before the Courts.

There was judgment for the defendant and plaintiff has appealed.

Plaintiff filed in evidence one check of $50 dated on the day of the contract February 11th, 1914, to the order of R. L. Sanford and by him endorsed, and his 12 promissory notes for $15 each payable March 20th, 1914 and on each successive month thereafter until February 20th, 1915, all of which are marked "Paid" with the stamp of the New Orleans Homesite Co., Ltd!' ; and one receipt for $15 signed by the same Company; making in all $245, and the plaintiff swears he paid that amount to the defendant Company.

The plaintiff and his wife are also examined, as witnesses, without objection to the admissibility of their testimony, except that it is "irrelevant under the pleadings". That testimony corroborates every allegation of the petition.

No evidence whatever was introduced on behalf of the defendant.

The only question, therefore, is, does plaintiff's petition disclose a cause of action?

We are not dealing here with an attack upon a contract on the bare ground that it contains a clause of the existence of which the plaintiff was not aware, or that it does not contain a clause which the plaintiff thought it did contain, without the suggestion of deceit or fraud on the part of the vendor. If this were the case, the plaintiff might be dismissed under the rule that he should have read what he was signing and that he cannot take advantage of his neglect to use his senses. But the charge made by the plaintiff is that a "repurchase clause" was inserted

in the contract, and that he was told by his vendor that the meaning of that clause was that the Company would buy back the lots with ten per cent profit, after he had made a certain number of payments, and that the Company would do so, and that he put full faith in that interpretation of that clause made by the Company, and, on the faith of that interpretation, signed the contract, made 14 payments and was prepared to make all future payments; but that he has been advised by attorneys learned in the law, that he has been deceived by those representations and that the repurchase clause imposes no such obligation on the Company and binds it to nothing. We have analyzed and criticised that clause and wer are inclined tb conclude that the attorneys consulted by the plaintiff were correct in their opinion. But whether their opinion is correct or not, one thing is certain, and that is, that the clause is of such ambiguity as to throw upon the defendant the burden of making it clear. Article C.C. 2474 (2449) provides:

"The seller is bound to explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is construed against him".

When the basis of plaintiff's action consisted in the allegation that defendants agent had represented to him that it would buy back the lots at ten per cent profit, but that the repurchase clause in the contract of sale embodied no such obligation, it would have been in the power of defendant to dispel any uncertainty in the meaning of this clause by an answer to those allegations which would have put the question at rest, by a candid and categorical admission of the Company's interpretation of the clause. But the Company denies specifically each and every allegation of the petition; it denies that the Company made any representations to the plaintiff that it would buy back the property with ten per cent profit; and at the same time it denies that the Company is not liable to repurchase on thos terms, thus leaving the subject matter in the same ambiguity and uncertainty. It is perfectly evident that if the plaintiff was made by the defendant to believe that he was buying under certain conditions and that defendant denies those conditions, that the minds of the two parties did not agree upon the contract and that there was error on both sides which invalidates the contract. *4 Ct.App. 338 — 13 C.J. §250 —*

It is the settled jurisprudence of this State that a purchaser cannot be made to accept a title with a cloud, and that whenever he has made payments on account, under those circumstances he may recover his money. 40 A., 571.

In 46 A., 499 (500) the Court said:

"The law will not hold a party bound when his consent is the result of error bearing on the substance of the contract, caused by fraudulent representations of the other party to the contract". 25 A., 292.

C. C. 1847 (1841) §9:

"If the artifice be practiced by a party to the contract, or by another with his knowledge or by his procurement, it vitiates the contract". *11 Bandry Lac p 139 § 109*

The representations made by the defendant were calculated to enchance the selling price of the lots and this damage plaintiff, and allured him by the assurance that he could never lose on his bargain, and would be sure to make a ten per cent profit. *X*

The case of Prescott vs. Cooper, 37 A., 553, does not support the defense. In that case the plaintiff bought of defendant his shares of Citizen's Bank Stock and transferred the mortgage securing the payment of the stock upon his own property and assumed the payment of the stock and of a stock-note of $1840. He subsequently filed suit to annul the transaction upon the ground that the Bank had called upon him to pay stock contributions of $2 a share which he had paid; that Cooper had falsely represented to him that he would have to assume only the stock-note of $1840 and that Ryan, Cooper's attorney, had informed him that the assumption of the stock-mortgage was a mere formality and imposed upon him no liability. The Court found that the contract signed by Prescott had been read to him by the Notary and discussed, that its terms were clear and unambiguous, that the allegations against Cooper were not established, and that Ryan was not Cooper's attorney. In the course of the opinion the Court said:

"If the formidable allegations of this petition were sustained by convincing evidence, the plaintiff would certainly present a strong claim for relief". 36 A., 620.

The same may be said of Ray vs. Mc Lain, 106 La., 780 (791); 6 Toullier § 93, 94 — *Pothier Oblig § 32 — 2 Delvincourt 10 Duranton no 177. 178 — 4 Aubry § 303 678 24 Demol no 184 — 15 Laurent no 529*

In the case under consideration the allegations of false representations are fully proven; no attempt is made to question their truth, and the representations were made by the President himself of defendant Company, and by their acknowledged sales-agent by which they are bound. 7 R., 406 (415); 1 Story Equity §193 (a). — *11 Bondy - Lac p. 151 599 112*

In Allen vs. Whetstone, 35 A., 846, the opinion is summarized in the syllabus thus:

> "A party to a written contract cannot avail himself of error resulting from a failure to read the same before signing, where not induced to do so by the other party thereto." 22 A., 14; 11 La., 77 (80); 10 La., 376.

The converse of the proposition is equally true, that the plaintiff is entitled to relief when he was induced in error by the defendant.

> Lopez vs. Mc Adam, 7 A., 58, the Court said:
> "When a party has been induced by misinformation and suppression of material facts x x x he is entitled to have the contract annulled, and to recover from the other party any sums he may have paid".

In the case of Theriot vs. Chaudoir, 17 La., 445, the Court said:

> "When there is doubt as to the error in the motive, the Court willi incline in favor of a party striving to avoid a loss, and against one seeking to obtain a gain".
> "Error consists in believing as true or existing, that which is false or non-existing". 33 Dalloz p. 79 §111.

The plaintiff believed from his reading of the contract and from the representations of the defendant that it was obligated to repurchase with ten per cent profit the lots he had bought; and the defendant well knew that the plaintiff purchased with that understanding, although no such obligation was contained in the contract. Plaintiff was in error and therefore the contract as to him never existed. 1st. Story Equity §134; 138 (c) (e) (k), 155, 190 (b), 191, 222; 13 Ct. App., 57 — *4 Ct. App. 338 -*

> "Whenever one persons misrepresents, or conceals, a material fact, that is, a fact which is peculiarly within his own knowledge, such transaction will be void, on the

188

ground of fraud". Story Equity §212 (a).

"If consent is obtained by meditated imposition, circumvention, surprise, or undue influence, it is to be treated as a delusion, and not as a deliberate and free act of the mind". §222.

It is therefore ordered that the judgment herein be reversed and annulled; and it is now ordered that there be judgment in favor of the plaintiff condemning the defendant to pay to him the sum of Two Hundred and forty-five Dollars with five per cent per annum interest from June 28th, 1917 till iid and all costs of suit.

January 26th, 1920.