No. 3113

Second Circuit

DYE v. DEMOPOLIS

(March 12, 1929. Opinion and Decree.)
(April 5, 1929. Rehearing Refused.)

Thatcher, Browne, Porteous and Myers, of Shreveport, attorneys for plaintiff, appellee.

Murff and Perkins, of Shreveport, attorneys for defendant, appellant.

## STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff, A. J. Dye, sued defendant, John Demopolis, for $509.74, as the price of labor performed and material furnished by him in repairing an automobile belonging to defendant; and, alleging that the work was done and the material furnished on a Cadillac touring car, Model 61-C, No. 504, and that he had a privilege on the automobile to secure the payment of the debt, and that he feared the defendant would sell, part with or conceal the car pending the suit, he obtained the issuance of a writ of sequestration and had the automobile impounded.

The defendant denied the correctness of the account, and assuming the character of plaintiff in reconvention asked for judgment against plaintiff in the sum of $1,000, alleging that he had been damaged in that amount by plaintiff, who was his friend and in whose judgment he reposed confidence, inducing him to buy the Cadillac automobile from W. D. Keith Motor Company for the price of $1750, when he, plaintiff, knew the Cadillac to be worth not more than $750.

On these issues the case was tried and there was judgment in favor of the plaintiff for the amount sued for and sustaining the writ of sequestration and rejecting defendant's reconventional demand and the defendant appealed.

## OPINION

Plaintiff testified that the labor was performed and the material furnished for the automobile and that they were of the value charged defendant; and, as to this, defendant, in brief, says:

"As to the legality and truthfulness of plaintiff's claim for repairs and parts, defendant is at the mercy of plaintiff, for he knew and knows nothing about machinery or automobiles, and it would be almost impossible for him, or any one else, to know just what repairs and parts had been used on the car during the three or four months time; hence, we shall be forced to rest our defense on defendant's reconventional demand."

This admission leaves for our consideration only the reconventional demand. And in considering it the first question that appears pertinent is the value of the Cadillac car.

W. D. Keith testified that he was the manager of the W. D. Keith Motor Company that had sold the defendant the car in question; and,

"Q. What condition was it in when you took it over, Mr. Keith?

"A. Randall Moore had returned from a trip that he made through Virginia, and we had put it in good condition.

\* \* \* \* \*

"Q. Did you take that car in, on a trade with Mr. Moore?

"A. Yes.

"Q. What did you allow Mr. Moore for that Cadillac?

"A. Nineteen hundred and sixty-five dollars.

"Q. Was it worth that? Did you consider it worth that?

"A. Well, at that time, the way Cadillacs were selling, I considered it worth that much or more; especially after we had put it in the condition that it was in at the time of the resale.

\* \* \* \* \*

"Q. Did you drive this one and examine it before you traded it to Mr. Demopolis?

"A. Yes, sir.

"Q. Was this car in good, serviceable condition?

"A. Absolutely. Now, if you will pardon me—

"Q. Go ahead.

"A. We didn't connive with Mr. Dye. I didn't know Mr. Dye from Adam's off ox. I never had anything to do with him.

\* \* \* \* \*

"Q. Was Mr. Dye your agent in making this deal between you and Mr. Demopolis?

"A. Not previous to this time—no, sir.

"Q. Did you have any agreement with Mr. Dye at all prior to the time that this trade was made, as to any commission, or fee you were to allow him for making this deal?

"A. Absolutely not.

\* \* \* \* \*

"Q. After this time, did you allow Mr. Dye a small commission for this work, Mr. Keith, if you remember?

"A. Not for any work, no.

"Q. That is, for?

"A. But Mr. Dye came into my office some days later and I asked him, I says: 'Dye, we want to give you something in the way of a commission on this sale, as we do on all our sales.' He said: 'Now, Mr. Keith, I am going to leave that entirely with you.' We were paying, at that time, three and a half per cent. commission, which was thirty-five dollars on this sale.

"Q. You allowed him $35?

"A. Yes, sir; and he did not ask for a penny in the world.

T. Randall Moore testified:

"Q. He stated that he allowed you nineteen hundred and sixty-five dollars? Is that correct?

"A. Approximately so. I have forgotten the exact figures, but that is approximately correct.

"Q. Mr. Moore, what was the condition insofar as you know, of that car as a second-hand car when you traded it in? Was it in good, serviceable condition?

"A. Well, it was giving me fair accommodation; of course subject to the usual wear and tear that you give a car that had been driven for the length of time that this had. I tried to keep it in good repair, and made it a practice to do that. If it had anything the matter with it, or wrong with it, outside of the usual natural wear, I didn't know it.

\* \* \* \* \*

"Q. You had run this car twenty-seven thousand miles when you turned it in?

"A. I think that is approximately right.

\* \* \* \* \*

"Q. Is twenty-seven thousand miles a great mileage for a Cadillac?

"A. Well, the Cadillac car I had owned before that, I drove fifty thousand miles and traded it in, and I have had no bad report from it since.

W. D. Keith testified:

"Q. Is twenty-seven thousand miles a big mileage for a Cadillac car to make, ordinarily? In other words, is that the life of the car?

"A. No; I would judge, Mr. Browne, probably they will go from seventy-five to one hundred thousand miles; a person can get that much out of one and people do get that much out of them.

G. M. Keith testified:

"Q. What was the condition of that Cadillac car at that time?

"A. It was in good, serviceable condition.

"Q. It has been testified here that that car was traded or sold for around

nineteen hundred dollars. Would you say that car was worth that amount?

"A. Well, I don't know what the car was sold for nor when it was sold, but it was worth that much at that time."

The only evidence at variance with the testimony of these witnesses is the testimony of the plaintiff himself who, however, admits that he knows nothing about an automobile beyond how to drive it.

"Q. All right, John; I will ask you right there—do you know anything about a car yourself?

"A. No, sir; I drive a car, is all I know; I don't know anything about it."

This evidence convinces us that the value of the car at the time defendant acquired it was at least $1800, which is more than defendant gave for it, and it follows therefore that plaintiff did not misrepresent its value to defendant.

But defendant's able counsel earnestly insist that the fact that repairs, costing $500, were needed on the car by November following its purchase in May, shows that the car was not worth what was paid for it at the time of the trade.

This argument loses force when it is considered that the car had been driven for five months after the trade and for more than 8,000 miles. In the two years that Randall T. Moore had owned the car it had been driven little more than three times this distance. And during the five months after defendant acquired the car it had been run at times without oiling and had received hard usage. It was also shown that an automobile's machinery may be ruined in a very short time or after it has been run only a short distance, by improper usage.

Defendant, plaintiff in reconvention, having alleged error superinduced by fraudulent misrepresentations on the part of plaintiff, as the basis of his claim for damages, carried the burden of proof to establish such facts; Palfrey vs. Stinson, 11 La. 77, and not only has defendant, plaintiff in reconvention, failed to discharge this burden, but plaintiff has shown the allegations to be baseless.

Defendant, plaintiff in reconvention, asserts that plaintiff, while holding himself out as his friend in the trade between himself and W. D. Keith Motor Company was, without so informing him, the agent of the W. D. Keith Motor Company and received from it a commission for effecting the sale of the automobile to him.

The evidence does not establish the agency alleged, and though it does show that plaintiff received a commission as charged it also shows that none was contracted for or expected by plaintiff and that the amount received for his services was more in the nature of a gratuity than payment for services rendered.

However, even had the W. D. Keith Motor Company been under obligation to pay plaintiff a commission, on the sale, defendant, plaintiff in reconvention, had no ground to complain, since, as we have found, there was no error or misrepresentation. There was no contractual relation, express or implied, between plaintiff and defendant, and if it were true (as it is not) that plaintiff's advice caused defendant a loss, it would only be another proof of the well-known fact that free advice is rarely worth anything.

The lower court, after seeing and hearing the witnesses testify, awarded plaintiff judgment for the amount sued for and rejected defendant's reconventional demand. A careful reading of the record convinces us that the judgment is correct and, accordingly, it is affirmed.